# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
COREY BROWN,                        :
                                    :
        Plaintiff,                  :
                                    :   CIVIL ACTION
    v.                              :
                                    :   NO. 16-cv-02737
CERTAIN UNDERWRITERS AT             :
LLOYDS, LONDON, ET AL.              :
                                    :
        Defendants.                 :
```

### MEMORANDUM

Joyner, J.                                              June 9, 2017

Before the Court are Plaintiff's Objection to Request to Produce Cell Phone for Examination by Expert (Doc. No. 27), Defendants' Response to Plaintiff's Objection to Request to Produce Cell Phone for Examination by Expert, and Defendants' Resulting Motion for Spoliation Sanctions (Doc. No. 29), Defendants' Supplemental Memorandum in Support of Defendants' Motion for Spoliation Sanctions (Doc. No. 36), Plaintiff's opposition thereto (Doc. No. 39), and Defendants' reply in further support thereof (Doc. No. 41). For the reasons below, Plaintiff's Objection is overruled and Defendants' Motion is granted in part and denied in part.

## I. Facts and Procedural Background

This case arises out of an incendiary fire that occurred on May 1, 2015 at Plaintiff's property located at 1220 South 50th Street in Philadelphia. (Complaint ("Compl."), Doc. No. 1-1, at

¶ 9). The Plaintiff, Corey Brown ("Mr. Brown"), filed a lawsuit in state court alleging that his insurers, Defendants Certain Underwriters at Lloyds, London and Underwriters at Lloyds, failed and refused to compensate him for losses incurred as result of that fire in breach of his insurance policy. Defendants removed the case to federal court and promptly filed their Answer to Plaintiff's Complaint in June 2016. After several months of discovery, Defendants moved for leave to amend its answer to assert various counterclaims. Defendants sought leave to allege, *inter alia*, that Plaintiff breached the terms of his insurance policy contract and violated the Pennsylvania Insurance Fraud Statute. (Doc. No. 23). The Court granted leave over Plaintiff's objection, and Defendants filed its amended answer on March 24, 2017. (Doc. No. 30; Doc. No. 31).

Meanwhile, on March 9, 2017, Defendants requested that Mr. Brown produce on March 21, 2017 the cell phone used by him at the time of the May 1, 2015 fire. Defendants suspect that Mr. Brown was involved in setting the fire to his property himself, (Doc. No. 29, at ¶ 14), and so they are interested in examining his cell phone to determine whether it contains any evidence that would tend to corroborate their suspicion. This request for production should not have come as a surprise to Mr. Brown, as the Defendants had previously announced their interest in that cell phone as far back as August 12, 2015. On that date, before

the filing of any court proceedings, counsel for Defendants took the testimony of Mr. Brown under oath, in order to preliminarily investigate Mr. Brown's insurance claim, and requested on the record that Mr. Brown preserve any evidence existing on his cell phone for potential future discovery.[1]  (Doc. No. 29-3; Doc. No. 41).

On March 20, 2017, the day before Mr. Brown was scheduled to produce his cell phone, Mr. Brown filed an Objection stating that he lost the cell phone "months ago."  (Doc. No. 27).  Defendants thereafter moved for spoliation sanctions.  (Doc. No. 29).  After Plaintiff failed to respond within the time provided by the Local Rules, the Court ordered Plaintiff to file a brief in opposition

---

[1] According to a transcript of that proceeding, Mr. Brown and counsel for the Defendants had the following exchanges regarding Mr. Brown's cell phone:

> Q. . . . I'll just ask that you not delete anything or erase anything with respect to your phone.
> A: No problem. . . .
>
> Q: . . . [M]y point is that what I don't want you to do between now and the time this thing is resolved -- I don't want you to delete or erase anything.  You can be guided by your attorney's instructions in that regard, but I'm just making a specific formal request that this information and documents in your phone data be preserved.  Fair enough?
>
> Q. . . . Here's the point, Mr. Brown: I haven't made actually a formal request for any of that information or that data, and I may not.  So, my point is just that it not disappear, so if I would make a request through your attorney, it would be limited and it would not -- I would not be interested in any way in your personal information.
> A: And I have no problem with that. . . .

See Examination Under Oath ("EUO") Testimony, August 12, 2015, Page 248, Line 21 though Page 250, Line 24 (Doc. No. 41).

or risk the Court granting Defendants' Motion as uncontested. (Doc. No. 38). Plaintiff thereafter filed a response in opposition and Defendants filed a reply memorandum in further support thereof. (Doc. No. 39; Doc. No. 41).

**II. Legal Standard**

"[T]here is some authority suggesting that spoliation of evidence, and the sanctions that such spoliation may give rise to, are matters appropriately governed by state law." Schmid v. Milwaukee Electric Tool Corp., 13 F.3d 76, 78 (3d Cir. 1994). "On the other hand, there is also authority suggesting that the possible preclusion of evidence in cases such as this is governed by federal law as part of the inherent power of a district court to sanction parties." Id.; see also Adkins v. Wolever, 554 F.3d 650, 652 (6th Cir. 2009) (applying federal law for spoliation sanctions); King v. Illinois Cent. R.R., 337 F.3d 550, 556 (5th Cir. 2003) (same). We will follow the Third Circuit's lead in considering precedent from both jurisdictions in our discussion of spoliation and its sanctions. See Capogrosso v. 30 River Court E. Urban Renewal Co., 482 F. App'x 677, 682 (3d Cir. 2012). In any event, the parties have cited no case law—and the Court has found none—suggesting that there are any material differences between state and federal law.

Spoliation occurs where "the evidence was in the party's control; the evidence is relevant to the claims or defenses in

4

the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." Bull v. United Parcel Serv., Inc., 665 F.3d 68, 73 (3d Cir. 2012). Failure to produce evidence can have the same practical effect as destroying it and so, "under certain circumstances, nonproduction of evidence is rightfully characterized as spoliation." Id.

The determination of an appropriate sanction for spoliation, if any, rests with the discretion of the trial court. First Sr. Fin. Grp. LLC v. Watchdog, No. 12-CV-1247, 2014 WL 1327584, at *10 (E.D. Pa. Apr. 3, 2014). The Court has authority to sanction litigants from the joint power of the Federal Rules of Civil Procedure and the Court's inherent powers. Id. Potential sanctions for spoliation include dismissal of a claim or granting judgment in favor of the prejudiced party, suppression of evidence, an adverse inference, fines, and attorneys' fees and costs. Id. Dismissal or suppression of evidence are the most drastic sanctions. Id. In considering what sanctions to impose, the trial court should consider "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future."

Bull, 665 at 73 n.5; Schmid, 13 F.3d at 79; see also Schroeder v. Dep't of Transp., 551 Pa. 243, 250-51 (1998) (adopting the Third Circuit's approach to the spoliation of evidence in Schmid).

## III. Analysis[2]

**1. Whether Spoliation Occurred**

Spoliation occurs where (1) the evidence was in the party's control, (2) the evidence is relevant to the claims or defenses in the case, (3) there has been actual suppression or withholding of evidence, and (4) the duty to preserve the evidence was reasonably foreseeable. Bull, 665 F.3d at 73.

We need not linger long on the first, second, and fourth elements. Mr. Brown obviously had control over his own cell phone. The Court also finds that the evidence lost is relevant to this case. The contents of Mr. Brown's cell phone, including location information, the substance of text messages, and search history would be important evidence as to whether Mr. Brown was involved in setting the May 1, 2015 fire, which is hugely relevant to both parties' claims. It is also plain that the duty to preserve his cell phone and its contents was reasonably foreseeable to Mr. Brown. In the course of examining Mr. Brown under oath before this litigation commenced, counsel for

---

[2] Plaintiff's objection to Defendants' Request for Production (Doc. No. 27) is wholly without merit and is overruled. Plaintiff objects to producing his new phone, which he acquired in October 2016, but he is objecting to a request not made. Defendants' RFP is on its face limited to those devices used by Plaintiff "at the time of the subject incident (May 1, 2015)." (Doc. No. 29-4).

6

Defendants requested on the record that Mr. Brown preserve his cell phone and the data included in it for potential future discovery. (Doc. No. 29-3). Mr. Brown acknowledged and acceded to that request. See supra, n.1.

Whether there has been actual suppression or withholding of evidence is harder to say. "Withholding requires intent," Bull, 665 F.3d at 79, and Mr. Brown has submitted a signed affidavit swearing that he "lost" the phone in October 2016 and "did not intentionally dispose of it." (Doc. No. 39). See also Orologio of Short Hills Inc v. The Swatch Grp. (U.S.) Inc., 653 F. App'x 134, 145 (3d Cir. 2016) ("Spoliation of evidence requires 'bad faith,' not mere negligence . . ."); Pyeritz v. Commonwealth, 613 Pa. 80, 89, 32 A.3d 687, 692 (2011) (negligent spoliation of evidence is not a viable cause of action in Pennsylvania).

The Court finds, however, that Mr. Brown's undetailed account of losing his phone is not credible and that, rather than innocently losing his phone, Mr. Brown made a deliberate choice to withhold it from production. In making that finding we note that Mr. Brown and his attorney did not notify Defendants of the loss of relevant evidence that he had a known duty to preserve until hours before the requested time of production, even though its loss had supposedly been known for at least four months. (Doc. No. 29). We are also cognizant of the sworn deposition testimony of Judy Cooks, a witness in this case. (Doc. No. 36-

2). In the course of Ms. Cooks' testimony, she revealed that Mr. Brown used his now-missing cell phone to communicate with her about the fire and this litigation. Ms. Cooks permitted defense counsel to take screenshots of purported communications with Mr. Brown. Those screenshots indicate that Ms. Cooks sent the following messages to Mr. Brown, on August 1, 2016:

> • "How do you think I feel with you threatening with being subpoenaed if I don't call your lawyer when in actuality where I come into play was not true"

> • "You care because it's benefiting [sic] you but I have my own issues to deal with you don't really care about what happens to me because if you did me getting a subpoena wouldn't be even in the equation of this whole situation when we both know the truth"

(Doc. No. 36-2, at 69-72). Ms. Cooks testified that, contrary to Mr. Brown's representations to the contrary, including those made in his examination under oath, she never signed a lease to reside at 1220 South 50th Street, never paid Mr. Brown any money toward a tenancy, and indeed never intended to move into Mr. Brown's rental property at all. (Doc. No. 36-2, at 26-27). The existence of a lease demonstrating occupancy was a prerequisite to the issuance of Mr. Brown's insurance policy. (Doc. No. 36).

The Court finds Ms. Cooks' testimony instructive for two reasons. First, it evidences a motive for Mr. Brown to conceal the evidence on his phone. And, second, it evidences a proclivity on Mr. Brown's part to lie under oath and fabricate evidence.

8

On the other side of the ledger, Plaintiff has declined to present much of a defense. Plaintiff's opposition to Defendants' Motion was filed only after Plaintiff was prodded to do so by the Court. Despite the fact that this eventual response was filed after the deposition of Ms. Cooks and more than one week after Defendants' Supplemental Memorandum citing heavily from Ms. Cooks' testimony, Plaintiff chose not to respond to Defendants' arguments about the implications of Ms. Cooks' testimony at all. Instead, Plaintiff asserts that he lost the phone in October 2016. (Doc. No. 39, at ¶ 5). Plaintiff further states that "[i]t is not the Plaintiff's fault that he lost his phone" and that "he had a right to continue using it and, as occurs with many people, he eventually lost it . . ." Id. at ¶ 10. Mr. Brown has offered zero explanation as to how he came to lose his phone. He has also offered no indication that he took even rudimentary steps to preserve the evidence that existed on his phone, as was his obligation, or to take any measures to find the phone after it was somehow lost.

On this record, we find that Defendants have satisfied their burden of showing that Plaintiff has suppressed or withheld relevant evidence. Having found that Plaintiff engaged in spoliation by failing to preserve his cell phone and the evidence contained therein, we must now consider what sanction, if any, is

9

appropriate.[3]

## 2. Appropriate Sanction

Defendants request appropriate sanctions against Plaintiff, including dismissal of this action. "There is no rule of law mandating a particular sanction upon a finding of improper destruction or loss of evidence; rather, such a decision is left to the discretion of the Court." Paramount Pictures Corp. v. Davis, 234 F.R.D. 102, 111 (E.D. Pa. 2005). In exercising that discretion, we consider (1) the degree of fault of the party who altered or destroyed evidence, (2) the degree of prejudice suffered by the opposing party, and (3) the availability of a lesser sanction that will avoid substantial unfairness to the opposing party and deter future similar conduct. Schmid, 13 F.3d at 79; Schroeder, 551 Pa. at 250. We are mindful that dismissal "is a drastic measure, and should be used only as a last resort." Bowman v. Am. Med. Sys., Inc., No. CIV. A. 96-7871, 1998 WL 721079, at *6 (E.D. Pa. Oct. 9, 1998) (internal quotations omitted). Indeed, "courts should 'select the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim.'" Paramount Pictures, 234 F.R.D. at 111 (quoting Schmid, 14 F.3d at 79).

---

[3] Courts sometimes analyze spoliation together with an analysis on the proper spoliation sanction. There is something to be said for that practice, as there is some overlap between the two. Following the Third Circuit in Bull, 665 F.3d at 73 n.5, however, we will analyze the sanctions issue separately, referring back to the spoliation analysis where appropriate.

**(A) Degree of Fault**

"In the spoliation analysis, fault has two components: responsibility, and the presence of bad faith." Cmty. Ass'n Underwriters of Am., Inc. v. Rhodes Dev. Grp., Inc., No. 1:09-CV-0257, 2013 WL 818596, at *5 (M.D. Pa. Mar. 5, 2013) (alterations omitted). "When determining the degree of fault and personal responsibility attributable to the party that destroyed the evidence, the court must consider whether that party intended to impair the ability of the other side to effectively litigate its case." Paramount Pictures, 234 F.R.D. at 111. For the reasons discussed above, the Court finds that Plaintiff was personally responsible for preserving the evidence contained in his cell phone and acted in bad faith by failing to do so. See Paluch v. Dawson, No. CIV. 1:CV-06-01751, 2009 WL 3287395, at *3 (M.D. Pa. Oct. 13, 2009) (finding party at fault for failing to take reasonable precautions in preserving videotape evidence); Paramount Pictures, 234 F.R.D. at 111 (finding party at fault for failure to preserve memory on computer's hard drive when he either knew or should have known that computer's memory was relevant to the lawsuit). Plaintiff's degree of fault is unmitigated and weighs heavily in favor of imposing sanctions.

**(B) Prejudice**

Defendants argue that they are significantly prejudiced by the loss of location information, as well as information

regarding calls and/or the substance of any text messages received at or about the time of the fire contained in Plaintiff's cell phone. Given that the fire appears to have been intentionally set, the spoliated evidence would have been highly relevant to determining the merits of Plaintiff's claim for insurance benefits and the merits of Defendants' counterclaim for insurance fraud. See Rhodes, 2013 WL 818596, at *8 ("The legal theory a plaintiff advances is relevant to determining the degree of prejudice to the defendant.").

Plaintiff argues that Defendant suffered no prejudice at all because it obtained a copy of Plaintiff's phone records through discovery and is aware of what numbers Plaintiff called at the relevant times. As to the text messages, Plaintiff argues that Defendants are not prejudiced because "[t]here may be no text messages applicable." (Doc. No. 39). But this is precisely the point. Defendants were entitled to examine what relevant evidence, if any, the phone contained, and they are prejudiced by their inability to determine whether any relevant text messages existed or not.[4] Plaintiff, moreover, offers no response at all

---

[4] Defendants concede that they have the ability to obtain limited information about text messages sent or received from Mr. Brown's cell phone through a record subpoena to his cellular carrier. (Doc. No. 41). It is unclear from the record whether Defendants have succeeded in obtaining those records. We understand that the cellular carrier's records would not reveal the substance of any text messages, (Doc. No. 41), but we pause to note the possibility that Defendants could not be prejudiced by the inability to review the substance of text messages if it were the case that no text messages were sent or received from Mr. Brown's phone on or around May 1, 2015, a fact that could be

to Defendants' argument that Plaintiff's cell phone would have contained relevant information about Defendants' location at the time of the fire.

Plaintiff also argues that Defendants are not prejudiced because they had "ample opportunity" to examine the cell phone and the messages therein but elected not to do so. (Doc. No. 39). It is true that when considering the degree of prejudice suffered, "the court should take into account whether that party had a meaningful opportunity to examine the evidence in question before it was destroyed," Paramount Pictures, 234 F.R.D. at 112, but Plaintiff's argument makes little sense in this case. Defendants issued a request for production within the time allowed for discovery. They are no less prejudiced by the loss of relevant evidence because they could have chosen to request Plaintiff's cell phone at an earlier date. The Court finds that Defendants are prejudiced by Plaintiff's spoliation of evidence because they "ha[ve] not and will not have any opportunity to determine whether" information on Plaintiff's cell phone would have aided their defense of Plaintiff's claim or their own insurance fraud counterclaim. Id. at 112. "Of course, when a party is denied any opportunity to examine evidence, [prejudice] would automatically be satisfied." Id. (quoting In re Wechsler, 121 F. Supp. 2d 404, 421 (D. Del. 2000)).

---

determined by an examination of the cellular carrier's records.

The Court finds that Defendants are prejudiced by Defendants' spoliation of evidence and that this prejudice is significant enough to weigh in favor of sanctions.

**(C) Substantial Unfairness and Deterrence**

Defendants urge us to deploy the harshest sanction available and dismiss Plaintiff's claims. Though they concede an adverse jury instruction may be sufficient to address the loss of relevant evidence, Defendants ask that we consider Plaintiff's earlier failures to timely respond to written discovery[5] and the ineffectiveness of any lesser sanction to achieve specific and general deterrence of such conduct in the future in fashioning an appropriate sanction. (Doc. No. 29). Plaintiff opposes any sanction, but notes that a jury instruction would be "more than sufficient." (Doc. No. 39, at ¶ 15).

Although it is a close call, we decline to impose the drastic sanction of dismissal at this time, because an adverse jury instruction will likely be sufficient to cure the prejudice to Defendants. We do, however, retain the right to select a more severe sanction, up to and including dismissal, should later evidence lead the Court to conclude that the prejudice to Defendants is more severe than the record reveals at this

---

[5] Defendants previously asked the Court to dismiss Plaintiff's claims with prejudice for failure to comply with a discovery order. (Doc. No. 17). We declined to impose any sanctions at that time, although we noted that the record showed "a history of dilatoriness for which [Mr. Brown] bears some personal responsibility." (Doc. No. 26).

14

juncture.  See Rhodes, 2013 WL 818596, at *10 n.7.

Under these circumstances, the Court finds it proper to instruct the members of the jury that they may infer that if Defendants were permitted to inspect Mr. Brown's cell phone, any evidence would have been unfavorable to Plaintiff.  The Court will entertain specific proposals on an adverse jury instruction and spoliation inference at or around the time of trial.

Given the Court's finding that Plaintiff acted in bad faith, we find the following further sanctions to also be appropriate: Plaintiff shall pay all fees and costs associated with Defendants' Motion for Spoliation Sanctions (Doc. No. 29), Defendants' Supplemental Memorandum in Support of Defendants' Motion for Spoliation Sanctions (Doc. No. 36), and Defendants' reply in further support thereof (Doc. No. 41).  Plaintiff shall also pay all fees and costs already incurred that are associated with Defendants' efforts to obtain records from Plaintiff's cellular carrier, including but not necessarily limited to those fees and costs associated with Defendants' Motion for Order to Authorize Release of Plaintiff's Cellular Telephone Data (Doc. No. 8).

**IV. Conclusion**

For the foregoing reasons, Plaintiff's Objection is overruled and Defendants' Motion is granted in part and denied in part.  An appropriate Order follows.